1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9        FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   AUBREY D. MCFALL,                    Case No.  1:21-cv-00562-JLT-BAM
12                  Plaintiff,
                                          **FINDINGS AND RECOMMENDATIONS**
13            v.                          **REGARDING PLAINTIFF'S MOTION FOR**
                                          **SUMMARY JUDGMENT**
14   LELAND DUDEK, Commissioner of Social
     Security,[1]                         (Doc. 20)
15
16                  Defendant.
17
18

19                        **<u>INTRODUCTION</u>**

20          Plaintiff Aubrey D. McFall ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying his application for Supplemental

22   Security Income under Title XVI of the Social Security Act.  The parties' briefing on the motion was

23   submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and

24   recommendations.  (Docs. 20, 25.)  Having considered the parties' briefs, along with the entire record

25   in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was supported

26   _____

27   [1] Leland Dudek became the Commissioner of Social Security in February 2025
     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted
28   for Kilolo Kijakazi as Defendant in this suit.

                                        1

by substantial evidence in the record and was based upon proper legal standards.  Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff applied for Title XVI Supplemental Security Income on May 19, 2017, alleging that he became disabled on September 14, 2009.  AR 82-83.[2]   The claim was denied initially on August 30, 2017, and on reconsideration on December 15, 2017.  AR 97-101, 104-107.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Scott Bryant held a hearing on October 29, 2019.  AR 41-63.  ALJ Bryant issued an order denying benefits on the basis that Plaintiff was not disabled on November 20, 2019.  AR 22-39.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 14-18.  This appeal followed.

**October 29, 2019 Hearing Testimony**

ALJ Scott Bryant held a hearing on October 29, 2019.  AR 41-63.  Amanda Munzer, an impartial vocational expert, also appeared and testified.  AR 58-61.  Plaintiff's attorney Al Leibovic was also present.  The ALJ began by confirming Plaintiff's social security number and date of birth and Plaintiff confirmed that he was 56 years old.  AR 43.  Plaintiff stated that he had received his GED.  *Id.*  Plaintiff's attorney then confirmed that the record was complete, and the ALJ admitted Exhibits 1A through 7F into evidence.  AR 44.  Plaintiff's attorney also stated that Plaintiff agreed to amend the onset date of September 14, 2009 to the protective filing date of May 19, 2017.  *Id.*

Upon examination by the ALJ, Plaintiff testified that he was not currently working in any capacity, and that his last job was in 2008 through Exact Staff at a recycle company.  AR 45.  Plaintiff said that he did not recall working in 2006.  *Id.*  The ALJ noted that his review of the record did not show anything "clearly indicative of SGA" and he would move past that step unless the vocational suggested otherwise, which she did not.  AR 45-46.

Upon examination by his attorney, Plaintiff testified that he could not work a full-time job due to irritable bowel syndrome, anxiety, major gout, neuropathy, kidney disease causing pain in his left

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

lower back area, and diabetes.  AR 46-47.  Plaintiff testified that he was taking 400 milligrams of Gabapentin for gout and neuropathy and that he did not take anything for pain because his insurance did not cover it.  AR 47.  He stated that he was following his diet for gout as strictly as he could but that his feet still hurt.  *Id.*  He said that his gout pain was constant but that he also got flareups "pretty much all the time" that involved a stabbing, shooting pain.  AR 48.  Plaintiff said that he had not taken any medications for kidney disease and had not had any treatment for his kidneys or for irritable bowel syndrome.  *Id.*  He testified that he used a cane but that he did not go out as much as he used to, so did not feel the need for the cane.  *Id.*  He said that he was given his cane by Dr. Kathy Sistan at VFC Family Health approximately two years prior to the hearing.  AR 49.  Plaintiff testified that he was taking Lorazepam for anxiety and previously had a psychiatrist until six to eight months prior to the hearing.  AR 49-50.

Plaintiff testified that his neuropathy and gout rated a ten out of ten as it always hurt and walking the day of the hearing "was a real task."  AR 50.  He said that when his pain was at its maximum, he would avoid walking and would usually end up laying down because sitting would put pressure on his stomach and not allow him to stretch out.  *Id.*  He stated that he spent approximately 75 percent of the day laying down because of back and kidney pain.  AR 50-51.  Plaintiff said that he could stand and walk approximately ten minutes at a time before having to sit down and that he would need to rest at least a half hour before he could stand and walk again.  AR 51.  He also stated that he could sit ten to 15 minutes before needing to stand up.  *Id.*  Plaintiff stated that he could lift up to ten pounds at one time comfortably because of his back, lack of grip, and his carpal tunnel surgery from ten to 15 years prior to the hearing.  AR 51-52.  He said that he experienced gout flares as pain in his feet, legs, and calves, and experienced neuropathy as pain in his feet.  AR 52.  He added that he did not have issues with his hands "for a while" due to neuropathy though it previously "seemed like it was getting to" his hands.  *Id.*  Plaintiff testified that, regarding personal care, putting socks on was "kind of hard" as he could not get them all the way up while on the bed or bending down.  *Id.*  He said that no one helped him with that and that he would "make do" but that he probably needed help with other personal care and was hesitant to receive it.  AR 52-53.  He said that he lived with three other adults but that they did not cook meals together.  AR 53.  Plaintiff testified that the other adults did not

3

help him in any way.  AR 53-54.  He further stated that he performed his own chores at home, including making his own bed and doing his own laundry.  AR 54.  Plaintiff said that he was able to do his own dishes but that he did not have too many dishes that needed to be cleaned.  *Id.*  He testified that he went grocery shopping by himself and could push a cart and grab things from the shelves normally for about 20 minutes.  *Id.*  He stated that he has had a few anxiety attacks while shopping and felt the need to leave a few times while shopping in the store.  *Id.*  He said that he did not think anxiety affected his ability to concentrate or remember things but assumed it had some effect on his memory and concentration.  AR 55.  Plaintiff testified that he was an easygoing person, would usually stick to himself, and could be a little confrontational.  *Id.*  He said that he did not attend church or social organizations, did not have friends besides those he lived with, and was not using drugs or alcohol currently.  *Id.*  Plaintiff said that he would use marijuana occasionally for his pain and for insomnia. *Id.*  He said that his doctors had not commented on his marijuana use.  AR 56.

In addition to the other conditions, Plaintiff stated that his stomach was an issue, that he was always gassy, and was diagnosed with GERD and gastrointestinal issues.  *Id.*  He said that he would get further testing done regarding his stomach.  *Id.*  Plaintiff further testified that he could drive for an hour or two hours if he was having a good day and not having limitations with his abdomen.  AR 57. He said that his ability to drive was affected by his side hurting and nausea and depended upon his condition.  AR 57-58.

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Amanda Munzer.  AR 58-61.  Plaintiff's attorney did not object to Ms. Munzer testifying as VE, and the VE stated that there was nothing more she needed before testifying.  AR 58.  The VE said that she would inform the ALJ if and how her testimony differed from the DOT or DOT/SCO.  *Id.*

The ALJ stated that he would move past the first step and proceeded with hypothetical questions.  *Id.*  For the first hypothetical, the ALJ asked the VE to assume an individual with Plaintiff's age, education, work experience, and ability to perform a full-range of medium exertional work with the limitations that the individual could only frequently reach, handle, finger, feel, push or pull with the bilateral upper extremities; could only frequently manipulate foot controls with the bilateral lower extremities; would have no requirement to climb ladders, ropes, scaffolds; would have

4

no requirement to work in proximity to unprotected heights or hazardous machinery; could only occasionally climb ramps or stairs; could only occasionally balance; could only frequently stoop, kneel, crouch, or crawl; could have only occasional exposure to cold temperature extremes; could only have occasional exposure to vibrations; would be limited to simple and routine tasks in the workplace and would not be capable of engaging in complex analysis or judgment; would be capable of maintaining pace in a simple and routine setting not requiring complex judgment or analysis requirements; could also interact with supervisors and co-employees with any simple and routine setting; and could adapt to changes within a simple and routine setting.  AR 58-59.  The VE testified that there were jobs in the national economy given those restrictions, including: Hospital Cleaner (DOT No. 323.687-010, medium, SVP 2, with 39,000 jobs nationally); Floor Waxer (DOT No. 381.687-034, medium, SVP 2, approximately 15,000 jobs nationally); and Laundry Worker I (DOT No. 361.684-014, medium, SVP 2, with 3,800 jobs nationally).  AR 59-60.  The VE testified that those positions were most of the work available and that none of those positions required constant use of bilateral extremities, noting that the Hospital Cleaner included frequent reaching and handling and occasional fingering while the Floor Waxer and Laundry Worker I jobs involved only occasional use of the bilateral extremities.  AR 60.  The VE testified that the hypothetical individual would not be able to successfully perform any jobs in the national economy if expected to be off task an average of 20 percent of the workday to manage his condition.  AR 60-61.  Upon examination by Plaintiff's attorney, the VE testified that there would be no work if the lifting and carrying in the first hypothetical were reduced to 20 pounds occasionally and ten pounds frequently.  AR 61.  The VE testified that an individual with those restrictions would be limited to light work.  *Id.*  The ALJ concluded the hearing by confirming Plaintiff's address.  AR 62.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 22-39.  Specifically, the

1   ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of

2   May 19, 2017. AR 27. The ALJ identified the following severe impairments: diabetes mellitus,

3   peripheral neuropathy, gout, and depression. *Id.* The ALJ also noted that Plaintiff suffered from

4   irritable bowel syndrome but that impairment either improved within one year or was mild in nature,

5   such that it did not affect Plaintiff's ability to work. *Id.* The ALJ further determined that Plaintiff did

6   not have an impairment or combination of impairments that met or medically equaled any of the listed

7   impairments. AR 28-29.

8         Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to

9   perform medium work with the limitations that Plaintiff: could frequently reach, handle, finger, feel,

10  push, and pull with the bilateral upper extremities; could frequently manipulate foot controls with the

11  bilateral lower extremities; could occasionally work in proximity to unprotected heights or hazardous

12  machinery; could occasionally climb ramps and stairs, ladders, ropes, and scaffolds, as well as

13  balance; could frequently stoop, kneel, crouch, and crawl; could have occasional exposure to extreme

14  temperatures and workplace vibrations; would be limited to simple, routine tasks, and would not be

15  capable of engaging in complex analysis or judgment; could maintain pace in a simple and routine

16  setting; and could interact with supervisors and co-employees, and adapt to changes within a simple

17  and routine work setting. AR 30. The ALJ considered "all symptoms and the extent to which these

18  symptoms can reasonably be accepted as consistent with the objective medical evidence and other

19  evidence," as well as "medical opinion(s) and prior administrative medical finding(s)." *Id.*

20        The ALJ found that Plaintiff had no past relevant work, was an individual closely approaching

21  advanced age as of the application date and subsequently changed age category to advanced age, had

22  at least a high school education and could communicate in English, and that transferability of job skills

23  was not an issue because Plaintiff did not have past relevant work. AR 33. Given Plaintiff's age,

24  education, work experience, and RFC, the ALJ found that there were jobs that existed in significant

25  numbers in the national economy that Plaintiff could perform. AR 33-34. The ALJ noted that

26  examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included: (1)

27  Hospital Cleaner (DOT No. 323.687-010, Medium, SVP 2, with 39,000 jobs in the national economy);

28  (2) Floor Waxier (DOT No. 381.687-034, Medium, SVP 2, with 15,000 jobs in the national economy);

1  and (3) Laundry Worker I (DOT No. 361.684-014, Medium, SVP 2, with 3,800 jobs in the national

2  economy).  AR 34.  The ALJ therefore concluded that Plaintiff had not been disabled since the

3  application date of May 19, 2017.  *Id.*

4                                    **SCOPE OF REVIEW**

5          Congress has provided a limited scope of judicial review of the Commissioner's decision to

6  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

7  Court must determine whether the decision of the Commissioner is supported by substantial evidence.

8  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

9  402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

10  1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

11  adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be

12  considered, weighing both the evidence that supports and the evidence that detracts from the

13  Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

14  evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

15  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

16  determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

17  and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

18  *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

19                                        **REVIEW**

20          In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

21  substantial gainful activity due to a medically determinable physical or mental impairment which has

22  lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

23  1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

24  severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

25  her age, education, and work experience, engage in any other kind of substantial gainful work which

26  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

27  burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

28  1990).

7

1

## DISCUSSION[3]

2

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting

3

Plaintiff's subjective symptoms. (Doc. 20 at 5-9.)

4

### A. Plaintiff's Subjective Complaints

5

Plaintiff contends that the ALJ committed harmful error by failing to provide clear and

6

convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence. (Doc. 20 at 5-

7

9.) In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-

8

step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d

9

1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her

10

impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.

11

*Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of

12

malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only

13

by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

14

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

15

expected to cause the alleged symptoms. AR 32. However, the ALJ discounted Plaintiff's statements

16

concerning the intensity, persistence, and limiting effects of those symptoms, noting that the

17

statements were not consistent with medical evidence and other evidence in the record. *Id.* The ALJ

18

was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's

19

subjective complaints.

20

First, the ALJ noted that despite Plaintiff's allegations, "the claimant admitted he is generally

21

capable of managing his personal care and hygiene, preparing meals, performing typical household

22

chores, driving, going shopping, managing his own finances, going to clubs, walking, and spending

23

time with others. (Hearing Testimony, Exhibit 8E)." AR 31; 41-63 (hearing testimony); 238-46 (July

24

2017 Function Report). An ALJ may properly discount a claimant's subjective complaints when the

25

daily activities demonstrate an inconsistency between what the claimant can do and the degree that

26

27

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

28

disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds. Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id*. at 1113.

Here, the ALJ noted that Plaintiff "alleges that he suffers from medical conditions that cause him to experience pain, fatigue, stiffness, numbness, weakness, nausea, depression, and difficulty lifting, squatting, bending, standing, walking, kneeling, climbing stairs, remembering, completing tasks, and using his hands. Specifically, the claimant alleged he can only stand and/or walk for up to ten minutes followed by at least thirty minutes rest, carry up to ten pounds, sit for up to fifteen minutes, and has a variable ability to follow instructions." AR 31. However, the ALJ then cited to hearing testimony and Plaintiff's self-reporting in a July 2017 Function Report to find that Plaintiff "admitted he is generally capable of managing his personal care and hygiene, preparing meals, performing typical household chores, driving, going shopping, managing his own finances, going to clubs, walking, and spending time with others." *Id.*

Indeed, during the hearing, Plaintiff testified that no one he lived with helped him in any way and though it was "kind of hard" to put on socks, he was able to "make do" with personal care. AR 52-54. Plaintiff also testified that he performed his own chores at home, including making his bed, doing laundry, and washing the few dishes that needed to be cleaned. AR 54. Plaintiff further stated that he went grocery shopping by himself, could push a cart, and could grab items from shelves for approximately 20 minutes, though sometimes he had anxiety attacks while shopping. *Id.* He testified that he did not think his anxiety affected his ability to concentrate or remember things though assumed it had some effect, and that he was generally an easygoing person and would usually stick to himself. AR 54-55. Plaintiff additionally testified that he was able to drive, though that was affected by pain and nausea. AR 57-58.

Furthermore, in the Function Report dated July 21, 2017, Plaintiff reported that his daily activities included waking up, taking his medication, trying to eat, cleaning his room, trying to loosen up his legs and feet, walking if up to it, and mostly relaxing due to feet pain. AR 239. Regarding

9

personal care, Plaintiff reported that that it was "difficult" to put on shoes and socks but that he did not

need special reminders to take care of personal needs and grooming and did not need help or

reminders to take his medicine.  AR 239-240. Regarding meals, Plaintiff reported that he prepared his

own meals daily, which took him 20 minutes and that he would eat soups and vegetables.  AR 240.

Regarding house and yard work, Plaintiff wrote that he did laundry and some cleaning and would do

"basic stuff" for the "average time," but did not require help or encouragement with those things and

would do it when he felt he could.  *Id.*  Regarding getting around, Plaintiff wrote that he tried to get

out as much as possible, traveled by car, could go out alone, and could drive.  AR 241.  He wrote that

he would do his shopping in stores and would go "as often as needed" for the "regular time" and that

his illnesses did not affect his ability to handle money - he was able to pay bills, count change, handle

a savings account, and use a checkbook/money orders.  AR 241-42.  Regarding hobbies, interests, and

social activities, Plaintiff reported he would watch TV, walk, and go out to clubs as often as he could,

although that was dependent on his feet pain.  He wrote that he spent time with others and would talk

on the phone, walk, and play chess when he could, though he noted that he did less than half of the

things that he used to do and listed "none" when asked the places he went on a regular basis.  AR 242-

43.  He checked that he did not need to be reminded to go places, he did not need someone to

accompany him, and that he did not have any problems getting along with family, friends, neighbors,

or others.  *Id.*  Plaintiff reported that his conditions affected his memory and his abilities to lift, squat,

bend, stand, walk, kneel, climb stairs, complete tasks, and use his hands, but that that he could finish

what he started, could follow written instructions if he was "up to it," was "good" at following written

instructions, was "good" at getting along with authority figures, had not been laid off from a job

because of problems with getting along with other people, handled stress and changes in routine "ok,"

and never needed to use assistive devices.  AR 243-44.  By contrasting Plaintiff's alleged disabilities

with Plaintiff's reported daily activities, the ALJ appropriately used Plaintiff's reported daily activities

to discount his symptoms testimony.  *Molina*, 674 F.3d at 1112-13.

Plaintiff argues that the ALJ overstated the evidence of daily activities.  (Doc. 20 at 6-7.)

Plaintiff notes that in the Function Report, Plaintiff wrote "none" when asked the places he went on a

regular basis and wrote that he only did chores when he felt he could and had difficulties putting on

shoes and socks.  AR 239-42.  However, Plaintiff does not address the hearing testimony in which he

testified that no one who he lived with helped him in any way and though it was "kind of hard" to put

on socks he was able to "make do" with personal care.  AR 52-54.  Plaintiff further ignores that he

indicated that, despite difficulties, he did not need special reminders to take care of personal needs and

was able to do basic chores in the "average time" and did not require help or encouragement with

those chores.  AR 239-40.  The ALJ reasonably examined the record regarding Plaintiff's daily

activities, and when "the evidence before the ALJ is subject to more than one rational interpretation,

we must defer to the ALJ's conclusion." *Batson,* 359 F.3d at 1198 (citing *Andrews v. Shalala,* 53 F.3d

1035, 1041 (9th Cir. 1995)).  Plaintiff's argument that the ALJ overstated Plaintiff's reported daily

activities in discounting his symptoms testimony therefore fails.

Plaintiff also argues that basic self-care and household chores do not contradict Plaintiff's

alleged limitations, citing Ninth Circuit caselaw.  *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.

1987) ("evidence that [claimant] could assist with some household chores was not determinative of

disability. 'Disability does not mean that a claimant must vegetate in a dark room excluded from all

forms of human and social activity.') (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981));

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the

mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,

or limited walking for exercise, does not in any way detract from her credibility as to her overall

disability.")

In *Vertigan,* the claimant was "able to go grocery shopping with assistance, walk

approximately an hour in the malls, get together with her friends, play cards, swim, watch television,

and read." *Vertigan,* 260 F.3d at 1049.  The ALJ in that case relied on this evidence to conclude that

the claimant's daily activities "involved physical functions that were inconsistent with her claims of

pain." *Id*. at 1150.  The Ninth Circuit determined that this conclusion was not supported by substantial

evidence because "these physical activities did not consume a substantial part of [the claimant's] day"

and because walking and swimming are activities that one might do for therapeutic reasons despite

pain. *Id.*  However, the Ninth Circuit elsewhere has upheld a determination that the claimant's daily

activities are inconsistent with testimony regarding the claimant's limitations. *See, e.g., Burch v.*

*Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (upholding adverse credibility determination based on claimant's ability to care for personal needs, cook, clean, shop, manage finances, and interact with boyfriend); *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) (claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude all work activity").

Here, Plaintiff's reports of his daily activities are greater than those in *Vertigan* and are more similar to the claimants in *Burch*, *Morgan*, and *Curry*. In determining that Plaintiff's reported daily activities indicated that he can perform basic work-related activities, the ALJ considered Plaintiff's reports that he can manage his personal care and hygiene, prepare meals, perform typical household chores, drive, go shopping, manage his own finances, go to clubs, walk, and spend time with others. AR 31. Considered collectively, this evidence shows that activities requiring skills transferable to the workplace comprise a substantial portion of Plaintiff's typical day. Just as in *Burch*, *Morgan*, and *Curry*, this evidence undermines Plaintiff's allegations that his medical conditions cause pain, fatigue, stiffness, numbness, weakness, nausea, depression, and difficulty lifting, squatting, bending, standing, walking, kneeling, climbing stairs, remembering, completing tasks, and using his hands which hinder his ability to perform work. *Id.* The ALJ here appropriately contrasted Plaintiff's alleged limitations with his reported activities as part of his discounting of Plaintiff's symptoms testimony. Plaintiff's arguments that the ALJ did not appropriately consider Plaintiff's reported daily activities therefore fails.

Second, the ALJ found that Plaintiff's allegations were not fully consistent with the medical and other evidence, noting that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations" and that "specifically, the medical findings do not support the existence of limitations greater than those reported in the residual functional capacity statement above." AR 31. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681 (9th Cir. 2005).

Here, the ALJ contrasted Plaintiff's allegations with the objective findings as follows:

> As for the claimant's statements about the intensity, persistence, and
> limiting effects of his or her symptoms, they are inconsistent because
> they are not fully supported by the objective medical evidence. In terms
> of the claimant's diabetes, peripheral neuropathy, and gout, these
> impairments were historically not well controlled, in part due to poor
> self-management. (see, Exhibits 1F, 2F). Since the claimant's May 2017
> application, the claimant continued to have poor management of his
> diabetic symptoms and blood glucose, despite using injected insulin.
> However, treatment providers typically noted the claimant reported poor
> dietary and medication compliance and generalized lack of motivation to
> manage his symptoms. Despite this, his physical examinations typically
> demonstrated normal findings without significant motor or neurological
> deficits. Moreover, despite numerous reminders to maintain normal
> dietary intake and use insulin consistently, the claimant frequently failed
> to adhere to these treatment recommendations. Additionally, despite the
> claimant's complaints of neuropathy, he often only complained of
> nausea symptoms in clinical follow up sessions. (Exhibits 2F, 3F, 4F). In
> April 2019, the claimant presented for a consultative examination with
> Rustom Damania, M.D. There, he reported a history of diabetes and
> gout with paresthesias in the extremities. His physical examination
> indicated normal range of motion throughout the spine and extremities.
> Additionally, the claimant was neurologically intact, including normal
> cranial nerves and full motor strength. Some slight sensory impairment
> was appreciated in the bilateral lower extremities, but he exhibited
> normal cerebellar function and reflexes. Finally, the claimant
> demonstrated a gait that was within normal limits, though he exhibited
> some difficulty walking on his toes due to pain. (Exhibit 5F).
>
> Turning to the claimant's mental impairment, the record indicates a
> history of depression with some difficulty managing his physical
> impairments due to lack of motivation and pervasive depressive
> symptoms. However, there is little evidence of formal mental health
> treatment. A psychological consultative examination from April 2019
> indicates the claimant presented with reports of depressive symptoms
> over the prior ten years, accompanied by insomnia and low energy. His
> mental status examination indicated the claimant kept fair eye contact
> and exhibited generally normal speech with a slight latency. Though he
> presented with a depressed mood and restricted affect, the claimant had
> goal-directed thought processes without evidence of delusions, and he
> was well oriented with intact concentration and recall. The claimant was
> also capable of performing simple mathematical calculations, and recall
> some information, but he struggled with more remote memory. (Exhibit
> 6F).

AR 31-32.

The ALJ first noted Plaintiff's allegations of "pain, fatigue, stiffness, numbness, weakness, nausea, depression, and difficulty lifting, squatting, bending, standing, walking, kneeling, climbing stairs, remembering, completing tasks, and using his hands" and that "he can only stand and/or walk for up to ten minutes followed by at least thirty minutes rest, carry up to ten pounds, sit for up to fifteen minutes, and has a variable ability to follow instructions."  AR 31.  The ALJ then contrasted those allegations and the findings of diabetes mellitus, peripheral neuropathy, gout, and depression with relatively normal physical examination findings, including Plaintiff only complaining of nausea despite poorly controlled diabetes and generally normal neurological and motor results).  AR 31-32; *see* 292 (July 2015 report noting diabetes mellitus type 2 and bilateral foot pain but normal physical exam findings); 296 (September 2015 report noting normal abdominal and neurological findings, denying abdominal pain, nausea, vomiting, numbness, weakness); 345 (January 2016 report noting poorly controlled diabetes mellitus type 2 and was nauseated at prior visit); 351-52 (March 2016 report noting poorly controlled diabetes but generally normal physical exam findings); 355-56 (June 2016 report noting poorly controlled diabetes and lower extremity pain but otherwise normal physical exam findings); 366-67 (November 2016 report noting poorly controlled diabetes but generally normal physical exam findings); 372-73 (December 2016 report noting  Plaintiff "continues to make poor food choices as evidenced by blood sugar of 440… ADVISED IF BS DO NOT IMPROVE WILL HAVE MAJOR COMPLICATIONS" and assessment of diabetes, resolving gout, and neuropathy but normal physical exam findings); 387-88 (June 2017 report noting poorly controlled diabetes but generally normal exam findings and negative for nausea, vomiting, and abdominal pain); 421-22 (July 2017 report noting poorly controlled diabetes and nausea complaint but generally normal exam findings and negative for nausea, vomiting, and abdominal pain); 454 (April 2019 examination report finding "Cranial nerves II through XII were grossly intact. Motor strength was 5/5 in all extremities with good tone bilaterally with good active range of motion. Slight sensory impairment lower extremities. Reflexes were normal and symmetric bilaterally at 2+ with no clonus. Cerebellar function was normal with finger-to-nose examination intact and Romberg negative"); 454 (April 2019 examination report noting gait was "Within normal limits. He did not use assistive device although he had difficulty ·walking on his toes because of the burning pain.").

Regarding Plaintiff's depression and mental impairments, the ALJ noted that despite a history of depression, there was little evidence of formal mental health treatment and an April 2019 mental status examination showed relatively normal findings. AR 32; 464 (April 2019 report noting depressed mood and restricted affect but fairly groomed, adequate personal hygiene, normal gait and posture, fair eye contact, normal speech with slight latency, normal body movement, denial of suicidal or homicidal ideations, goal-directed thought process, non-delusional thought content, denial of hallucinations or paranoid ideations, generally normal cognitive skills test results). In examining the record regarding all of Plaintiff's severe impairments, the ALJ appropriately discussed the medical evidence as one factor in discounting Plaintiff's symptoms testimony.

Plaintiff argues that the ALJ failed to state with any specificity how the objective findings contradict Plaintiff's alleged limitations in any way, contending that the ALJ cited a mix of limitations and normal findings but did not reconcile those findings with Plaintiff's allegations. Plaintiff cites principally to *Brown-Hunter v. Colvin*, in which the Ninth Circuit held that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

In contrast with *Brown-Hunter*, the ALJ here did not automatically reject statements inconsistent with the ALJ's RFC assessment or simply recite the medical evidence. Instead, the ALJ first laid out the severe impairments and alleged limitations and then explained how the medical records and examination reports contrast with the allegations. AR 31-32. The ALJ discussed how the relatively normal examination findings and limited nausea complaints compared with Plaintiff's more severe reported symptoms from diabetes, peripheral neuropathy, and gout. *Id.* The ALJ also discussed how an April 2019 mental status examination report undermined Plaintiff's reported limitations with depression, memory, and completing tasks. AR 32; 464-65. Plaintiff's argument that the ALJ did not adequately explain the reasoning in examining the objective findings is therefore unavailing.

Plaintiff additionally argues that the ALJ inappropriately appeared to discount Plaintiff's symptoms testimony based upon Plaintiff's noncompliance with diet and medication related to his

1    diabetes.  (Doc. 20 at 8-9.)  However, a plain reading of the ALJ's opinion shows that the ALJ was not

2    discounting Plaintiff's symptoms based on noncompliance but instead finding that even during periods

3    of noncompliance or poor control of Plaintiff's diabetes, the record showed few symptoms beyond

4    nausea.  AR 31-32.  This discussion contributed to the ALJ's examination of the objective findings

5    and was not a separate basis for discounting Plaintiff's symptoms testimony.  *Id.*  The ALJ's

6    discounting of symptoms testimony was therefore based on appropriate rationale, and Plaintiff's

7    argument fails.

8        Accordingly, the Court concludes that the ALJ did not err in discounting Plaintiff's subjective

9    complaints.

10    ///

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and

2.    The Clerk of this Court be directed to enter judgment in favor of Defendant Leland Dudek, Acting Commissioner of Social Security, and against Plaintiff Aubrey D. McFall.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **March 7, 2025**                    /s/ Barbara A. McAuliffe
                                         UNITED STATES MAGISTRATE JUDGE

17