1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 AUBREY D. MCFALL,                         )  Case No.: 1:21-cv-0562 JLT BAM
                                             )
12          Plaintiff,                       )  ORDER ADOPTING IN PART THE FINDINGS
                                             )  AND RECOMMENDATIONS, DENYING
13     v.                                    )  PLAINTIFF'S APPEAL, GRANTING
                                             )  DEFENDANT'S REQUEST TO AFFIRM, AND
14 FRANK BISIGNANO,                          )  DIRECTING ENTRY OF JUDGMENT IN
   Commissioner of Social Security[1],       )  FAVOR OF DEFENDANT
15                                           )
            Defendant.                       )  (Docs. 20, 25, and 26)
16 _____ )

17          Aubrey McFall seeks judicial review of a final decision denying his application for

18 supplemental security income under Title XVI of the Social Security Act.  (Docs. 1, 20.)  Plaintiff

19 asserts the ALJ erred in evaluating his subjective complaints and requests the matter be remanded for

20 further administrative proceedings.  (Doc. 20 at 5-9.)  The Commissioner asserts the ALJ's analysis

21 was proper, and substantial evidence supports the ALJ's findings.  (Doc. 25 at 3-7.)  For the reasons set

22 forth below, Plaintiff's appeal is denied and Commissioner's request to affirm is granted.

23 **I.      Decision of the ALJ**

24          The ALJ evaluated Plaintiff's application using the five-step sequential evaluation set forth in

25 20 C.F.R. § 416.920.  (Doc. 15-2 at 30-39.)  First, the ALJ determined Plaintiff did not engage in

26

27 _____

28 [1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, the Court substitutes Mr. Bisignano as substituted as the defendant in this
suit.

substantial gainful activity after the application date of May 19, 2017. (*Id.* at 31.) Second, the ALJ found Plaintiff's severe impairments included "diabetes mellitus, peripheral neuropathy, gout, and depression." (*Id.*) The ALJ noted Plaintiff also had irritable bowel syndrome but found this impairment was "nonsevere" because "it does not cause a significant limitation of physical or mental ability to do basic work activities." (*Id.*)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 15-2 at 32.) Next, the ALJ found:

> [T]he residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that he can frequently reach, handle, finger, feel, push, and pull with the bilateral upper extremities. He can frequently manipulate foot controls with the bilateral lower extremities. He can occasionally work in proximity to unprotected heights or hazardous machinery. He can occasionally climb ramps and stairs, ladders, ropes, and scaffolds, as well as balance. He can frequently stoop, kneel, crouch, and crawl. He can have occasional exposure to extreme temperatures and workplace vibrations. He is also limited to simple, routine tasks, and is not capable of engaging in complex analysis or judgment. He can maintain pace in a simple and routine setting. He can interact with supervisors and co-employees, and adapt to changes within a simple and routine work setting.

(*Id.* at 34.) The ALJ determined at step four that Plaintiff did not have any past relevant work to evaluate. (*Id.* at 28.) However, with the identified residual functional capacity, the ALJ found Plaintiff could perform work existing in significant numbers in the national economy, including hospital cleaner, floor waxer, and laundry worker. (*Id.* at 38-38.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 38.)

## II.    Issues Raised by Plaintiff

Plaintiff asserts that "[t]he ALJ erred in evaluating Plaintiff's subjective complaints." (Doc. 20 at 5 [emphasis omitted].) Plaintiff contends the ALJ did not include limitations in the RFC that correspond to Plaintiff's testimony concerning his symptoms from diabetes and neuropathy. (*Id.* at 5-6.) According to Plaintiff, the ALJ erred in finding Plaintiff's level of activity was inconsistent with his reported limitations because "the ALJ took Plaintiff's activities out of context and overstated Plaintiff's engagement in activity." (*Id.* at 6.) Plaintiff asserts that he does not "regularly" engage in the activities identified and his "[b]asic self-care and household chores do not contradict Plaintiff's alleged limitations." (*Id.* at 7.) Plaintiff also contends the ALJ erred considering the medical record and

1   Plaintiff's noncompliance with treatment to reject his testimony.  (*Id.* at 7-9.)  Consequently, Plaintiff

2   argues that "the ALJ failed to identify any clear and convincing reason for discounting Plaintiff's

3   subjective symptoms," and the matter should be remanded for further proceedings."  (*Id.* at 9.)

4   **III.    Findings and Recommendations**

5           The magistrate judge determined that "the ALJ did not err in discounting Plaintiff's subjective

6   complaints."  (Doc. 26 at 16; *see also id.* at 8-16.)  First, the magistrate judge found the ALJ

7   appropriately considered Plaintiff's reported daily activities to evaluate his symptom testimony because

8   the ALJ "contrast[ed] Plaintiff's alleged disabilities with [his] reported daily activities."  (*Id.* at 10.)

9   The magistrate judge also rejected Plaintiff's argument that "the ALJ overstated the evidence of daily

10  activities."  (*Id.* at 10-11.)  To the extent Plaintiff argued his "basic self-care and household chores do

11  not contradict Plaintiff's alleged limitations," the magistrate judge found the argument failed because

12  Plaintiff's activities were consistent with those the Ninth Circuit found ALJs properly considered as

13  part of adverse credibility determinations.  (*Id.* at 12, citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th

14  Cir. 2005); *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999); *Curry v. Sullivan*, 925 F.2d 1127, 1130

15  (9th Cir. 1991).)

16          Next, the magistrate judge found the ALJ properly considered the objective medical evidence in

17  rejecting Plaintiff's subjective statements.  (Doc. 26 at 12-15.)  The magistrate judge observed:

18              The ALJ first noted Plaintiff's allegations of "pain, fatigue, stiffness,
                numbness, weakness, nausea, depression, and difficulty lifting, squatting,
19              bending, standing, walking, kneeling, climbing stairs, remembering,
                completing tasks, and using his hands" and that "he can only stand and/or
20              walk for up to ten minutes followed by at least thirty minutes rest, carry up
                to ten pounds, sit for up to fifteen minutes, and has a variable ability to
21              follow instructions." AR 31. The ALJ then contrasted those allegations
                and the findings of diabetes mellitus, peripheral neuropathy, gout, and
22              depression with relatively normal physical examination findings, including
                Plaintiff only complaining of nausea despite poorly controlled diabetes
23              and generally normal neurological and motor results). AR 31-32.

24  (*Id.* at 14.)  The magistrate judge reviewed the exhibits cited by the ALJ and found the record

25  supported the ALJ's determination.  (*Id.*)  In addition, the magistrate judge noted the ALJ found "little

26  evidence of formal mental health treatment and an April 2019 mental status examination showed

27  relatively normal findings," despite Plaintiff's report of depression and mental impairments.  (*Id.* at

28  15.)  As a result, the magistrate judge found "the ALJ appropriately discussed the medical evidence as

3

one factor in discounting Plaintiff's symptoms testimony." (*Id.*)

Plaintiff also argued that "the ALJ did not adequately explain the reasoning in examining the objective findings," citing to *Brown-Hunter v. Colvin*, in which the Ninth Circuit held that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." (Doc. 26 at 15, quoting *Brown-Hunter*, 806 F.3d 487, 489 (9th Cir. 2015). The magistrate judge found:

> In contrast with *Brown-Hunter*, the ALJ here did not automatically reject statements inconsistent with the ALJ's RFC assessment or simply recite the medical evidence. Instead, the ALJ first laid out the severe impairments and alleged limitations and then explained how the medical records and examination reports contrast with the allegations. AR 31-32. The ALJ discussed how the relatively normal examination findings and limited nausea complaints compared with Plaintiff's more severe reported symptoms from diabetes, peripheral neuropathy, and gout. *Id.* The ALJ also discussed how an April 2019 mental status examination report undermined Plaintiff's reported limitations with depression, memory, and completing tasks. AR 32; 464-65.

(*Id.*) Therefore, the magistrate judge found Plaintiff's argument was "unavailing." (Doc. 26 at 15.)

Finally, the magistrate judge rejected Plaintiff's argument that "the ALJ inappropriately appeared to discount Plaintiff's symptoms testimony based upon [his] noncompliance with diet and medication related to his diabetes." (Doc. 26 at 15-16.) The magistrate judge opined that "a plain reading … shows that the ALJ was not discounting Plaintiff's symptoms based on noncompliance but instead finding that even during periods of noncompliance or poor control of Plaintiff's diabetes, the record showed few symptoms beyond nausea." (*Id.* at 16.) The magistrate judge found the "discussion contributed to the ALJ's examination of the objective findings and was not a separate basis for discounting Plaintiff's symptoms testimony." (*Id.*) Consequently, the magistrate judge found the ALJ did not err considering Plaintiff's noncompliance. (*Id.*)

The magistrate judge concluded that "the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards." (Doc. 26 at 17.) Therefore, the magistrate judge recommended the Court deny Plaintiff's appeal. (*Id.*)

## IV.    Objections

Plaintiff contends the Court should reject the "findings that the ALJ did not err in failing to provide clear and convincing reasons to reject symptomology evidence." (Doc. 26 at 2 [emphasis

omitted].)  Plaintiff argues, "the magistrate judge failed to address the argument raised in Plaintiff's [opening brief] that the ALJ considerably overstates [Plaintiff's] ability to perform basic activities of daily living on any sustained basis, as actually detailed in the function reports and hearing testimony." (*Id.* [cleaned up]; *see also id.* at 4-8.)  In addition, Plaintiff contends the magistrate judge erred in finding his level of activity was a clear and convincing reason to reject his testimony because the ALJ did not find Plaintiff engaged in the activity for a "substantial portion" of his day, or that his activities were transferrable to work.  (*Id.* at 9-10.)

Plaintiff also contends the magistrate judge erred in considering the medical record and "only vaguely address[ed] the issue of 'non-compliance' raised by the ALJ."  (Doc. 29 at 11.)  According to Plaintiff, the consideration of noncompliance was an error, because "the ALJ failed to demonstrate that any noncompliance was evidence of a lack of symptoms, or that compliance with medications and diet would have alleviated Plaintiff's disability."  (*Id.*)  He also contends the ALJ failed "to identify any evidence with specificity regarding a lack of compliance and the correlation with the ability to return to work activity and harmfully errs by citing generally to two exhibits as a whole" for the proposition that "treatment providers typically noted the claimant reported poor dietary and medication compliance and a generalized lack of motivation to manage symptoms." (*Id.* at 11-12.)  Thus, Plaintiff maintains that the ALJ did not properly consider the record in rejecting his subjective complaints.  (*Id.*)

**V.    Discussion**

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..."  28 U.S.C. § 636(b)(1).  If a party files objections, "the court shall make a determination of those portions of the report or specified proposed finding or recommendations to which objection is made."  *Id.*  A *de novo* review requires the Court to "consider[] the matter anew, as if no decision had been rendered."  *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

**A.    Evaluating subjective statements**

To evaluate a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for rejecting subjective complaints. *Id.* at 1036. An ALJ may consider many factors to assess a claimant's statements, including, for example: (1) the objective medical evidence, (2) the claimant's reputation for truthfulness, (3) inconsistencies in testimony or between testimony and conduct, (4) the claimant's daily activities, (5) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (6) testimony from physicians about the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

## B.    The ALJ's analysis

The ALJ summarized Plaintiff's subjective complaints—from both his function report and the hearing—as follows:

> The claimant alleges that he suffers from medical conditions that cause him to experience pain, fatigue, stiffness, numbness, weakness, nausea, depression, and difficulty lifting, squatting, bending, standing, walking, kneeling, climbing stairs, remembering, completing tasks, and using his hands. Specifically, the claimant alleged he can only stand and/or walk for up to ten minutes followed by at least thirty minutes rest, carry up to ten pounds, sit for up to fifteen minutes, and has a variable ability to follow instructions.

(Doc. 15-2 at 35.) The ALJ then stated, "Despite his allegations, the claimant admitted he is generally capable of managing his personal care and hygiene, preparing meals, performing typical household chores, driving, going shopping, managing his own finances, going to clubs, walking, and spending time with others." (*Id.*) The ALJ continued to compare Plaintiff's subjective complaints with the objective medical record by stating:

> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported in the residual functional capacity statement above.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his [] symptoms, they are inconsistent because they are not fully supported by the objective medical evidence. In terms of the claimant's diabetes, peripheral neuropathy, and gout, these impairments were historically not well controlled, in part due to poor self-management. (see, Exhibits 1F, 2F). Since the claimant's May 2017 application, the claimant continued to have poor management of his diabetic symptoms and blood glucose, despite using injected insulin. However, treatment

providers typically noted the claimant reported poor dietary and medication compliance and generalized lack of motivation to manage his symptoms. Despite this, his physical examinations typically demonstrated normal findings without significant motor or neurological deficits. Moreover, despite numerous reminders to maintain normal dietary intake and use insulin consistently, the claimant frequently failed to adhere to these treatment recommendations. Additionally, despite the claimant's complaints of neuropathy, he often only complained of nausea symptoms in clinical follow up sessions. (Exhibits 2F, 3F, 4F). In April 2019, the claimant presented for a consultative examination with Rustom Damania, M.D. There, he reported a history of diabetes and gout with paresthesias in the extremities. His physical examination indicated normal range of motion throughout the spine and extremities. Additionally, the claimant was neurologically intact, including normal cranial nerves and full motor strength. Some slight sensory impairment was appreciated in the bilateral lower extremities, but he exhibited normal cerebellar function and reflexes. Finally, the claimant demonstrated a gait that was within normal limits, though he exhibited some difficulty walking on his toes due to pain. (Exhibit 5F).

(Doc. 15-2 at 35-36.)  Thus, in reviewing Plaintiff's subjective complaints, the ALJ considered Plaintiff's level of activity, the objective medical record, and the severity of symptoms despite noncompliance with treatment.  (*Id.*)

       1.     Plaintiff's reported activities

A claimant's level of activity may be sufficient to support an ALJ's determination to give less weight to his subjective statements.  When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603).  In addition, the Ninth Circuit determined that a claimant's activities may be used to support an adverse credibility determination where the capabilities contradict the severity of the symptoms reported.  *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  For example, the Ninth Circuit determined the ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding of credibility.  *Stubbs-Danielson*, 539 F.3d at 1175.  An ALJ may also conclude "the severity of … limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities.  *Valentine*, 574 F.3d at 693.  The Ninth Circuit explained, "Even where ... activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent

that they contradict claims of a totally debilitating impairment." *Stubbs-Danielson*, 539 F.3d at 1175; *see also Valentine*, 574 F.3d at 693 (finding the ALJ identified "a clear and convincing reason to reject [the claimant's] subjective testimony" where the level of activity "contradicted [his] contentions about how debilitating his fatigue was").

Here, the ALJ observed that Plaintiff "admitted he is generally capable of managing his personal care and hygiene, preparing meals, performing typical household chores, driving, going shopping, [and] managing his own finances ..." (Doc. 15-2 at 37.)  Although Plaintiff contends "the magistrate judge failed to address" his argument that the ALJ overstated his activities (Doc. 26 at 2), this assertion is contradicted by the record.  The magistrate judge specifically observed, "Plaintiff argues that the ALJ overstated the evidence of daily activities," and reviewed the hearing testimony and function reports to evaluate the merits of the argument.  (*Id.* at 10-11.)  The magistrate judge found:

> Plaintiff does not address the hearing testimony in which he testified that no one who he lived with helped him in any way and though it was "kind of hard" to put on socks he was able to "make do" with personal care. AR 52-54. Plaintiff further ignores that he indicated that, despite difficulties, he did not need special reminders to take care of personal needs and was able to do basic chores in the "average time" and did not require help or encouragement with those chores. AR 239-40.

(*Id.* at 11.)  The magistrate judge concluded, "Plaintiff's argument that the ALJ overstated Plaintiff's reported daily activities in discounting his symptoms testimony therefore fails." (*Id.*)  Thus, Plaintiff's objection that the magistrate judge did not address his argument is meritless.  As the magistrate judge observed, Plaintiff did not acknowledge this testimony, which the ALJ incorporated into his analysis concerning Plaintiff's capabilities.  Significantly, the identified activities are like those the Ninth Circuit found sufficient in *Stubbs-Danielson* to support the rejection of the claimant's statements.  *See Stubbs-Danielson*, 539 F.3d at 1175; *see also Curry*, 925 F.2d at 1130 (a claimant's ability to care for personal needs, "prepare easy meals, do light housework, and shop for some groceries," may be viewed as "inconsistent with the presence of a condition which would preclude all work activity").

The Ninth Circuit explained, "Although the evidence of [the plaintiff's] daily activities may also admit of an interpretation more favorable to [him], the ALJ's interpretation was rational, and [the court] 'must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'"  *Burch*, 400 F.3d at 680 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989)).  Consequently, capabilities and activities identified by the ALJ support the decision to give less weight to Plaintiff's testimony concerning the severity of his symptoms.[2]  *See Valentine*, 574 F.3d at 693; *Stubbs-Danielson*, 539 F.3d at 1175; *Curry*, 925 F.2d at 1130.

### 2. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine … credibility."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  The Ninth Circuit explained, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").  Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in evaluating his subjective complaints.

However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the record contradicts the testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination").  Instead, an ALJ must identify "what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (ALJ must identify "what evidence suggests the complaints are not credible").  Unless the ALJ links the claimant's testimony to "the observations an ALJ makes as part of the summary of the medical record," the summary is not sufficient to reject a claimant's subjective statements.  *Argueta v. Colvin*, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016) (citing *Brown-*

---

[2] The Court notes the magistrate judge made a finding that Plaintiff's activities are transferable to work (Doc. 26 at 12), a finding to which Plaintiff objects.  Because *the ALJ* did not make this determination, as Plaintiff argues, the Court declines to adopt the *post hoc* finding by the magistrate judge.  However, this finding does not undermine the ultimate determination that the ALJ properly considered the inconsistencies with Plaintiff's self-reported capabilities and his testimony concerning the severity of his symptoms. *See Stubbs-Danielson*, 539 F.3d at 1175; *see also Curry*, 925 F.2d at 1130.

1    *Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015)).  In addition, district court may not review an

2    ALJ's summary of the record to itself establish a link between a claimant's testimony and the record.

3    In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for

4    rejecting her symptom testimony.  *Id.*, 806 F.3d at 491.  The district court identified inconsistencies in

5    the ALJ's summary of the medical record that it opined gave rise to reasonable inferences about the

6    plaintiff's credibility.  *Id.*  On appeal, the Ninth Circuit determined the ALJ failed to identify the

7    specific testimony she found not credible and did not link that testimony to support the adverse

8    credibility determination. *Id.* at 493.  The Court explained that even if the district court's analysis was

9    sound, the analysis could not cure the ALJ's failure.  *Id.* at 494.

10          The Ninth Circuit also determined an ALJ erred when discrediting symptom testimony as "not

11   entirely consistent with the medical evidence," without linking testimony and medical evidence in

12   *Holcomb v. Saul*, 832 Fed. App'x. 505 (9th Cir. Dec. 28, 2020).  In *Holcomb*, the ALJ summarized the

13   claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the

14   medical evidence and other evidence in the record.'"  *Id.* at 506.  The Court found that "the ALJ

15   discussed relevant medical evidence but failed to link Holcomb's symptom testimony to specific

16   medical records and explain why those medical records contradicted his symptom testimony."  *Id.*

17   Because the Court is constrained to the reviewing reasons identified by the ALJ for discounting

18   testimony, the "failure to specific the reasons for discrediting Holcomb's symptom testimony was

19   reversible error."  *Id.* (citing *Brown-Hunter*, 806 F.3d at 494).

20          In contrast to *Brown-Hunter* and *Holcomb*, the ALJ sufficiently carried the burden to link

21   Plaintiff's subjective statements to the record.  For example, the ALJ stated that "despite the claimant's

22   complaints of neuropathy, he often only complained of nausea symptoms in clinical follow up

23   sessions."  (Doc. 15-2 at 35, citation omitted.)  The ALJ also observed that while Plaintiff "reported …

24   paresthesias in the extremities," the physical consultative examination showed he was "neurologically

25   intact, including normal cranial nerves and full motor strength," as well as normal reflexes despite

26   "slight sensory impairment" in his legs.  (*Id.* at 35-36.)  As the magistrate judge observed, "The ALJ

27   also discussed how an April 2019 mental status examination report undermined Plaintiff's reported

28   limitations with depression, memory, and completing tasks."  (Doc. 26 at 15, citing Doc. 15-2 at 36.)

1    While the links between Plaintiff's statements and the record may be minimal, they are sufficient to

2    show the ALJ considered Plaintiff's testimony while discussing the medical record, and identified

3    evidence that contradicted the testimony.  *Compare with Holcomb*, 832 Fed. App'x at 506 (finding no

4    link where "the ALJ never mentioned [the claimant's] symptom testimony while discussing the relevant

5    medical evidence").  Consequently, Plaintiff's assertion of error on this ground is unavailing.[3]

6                        3.    Noncompliance with treatment

7            The Ninth Circuit stated, "[A]n unexplained, or inadequately explained, failure to … follow a

8    prescribed course of treatment … can cast doubt on the sincerity of the claimant's pain testimony."

9    *Fair*, 885 F.2d at 603.  Therefore, noncompliance with a prescribed course of treatment is clear and

10   convincing reason for finding a plaintiff's subjective complaints lack credibility.  *Id.*; *see also Bunnell*,

11   947 F.2d at 346.  As the ALJ indicated, the record contains repeated observations that Plaintiff had

12   "poor self-management" of his treatment, as well as "poor … medication compliance."  (Doc. 15-2 at

13   35 [citing Exhs. 1F, 2F]; *see also, e.g., id.* at 355 (Exh. 2F, pg. 32 ["not following dietary guidelines"];

14   *id.* at 387 (Exh. 2F, pg. 64 [finding Plaintiff "continue[d] with poor control"]); *id.* at 379 (Exh. 2F at 56

15   ["not consistent with taking medication- self management needs to improve!!"]; *id.* at 395 (Exh. 2F at

16   72, [finding diabetes was "poorly controlled" and Plaintiff had "multiple excuses for high blood

17   sugar"].)  Plaintiff does not dispute the ALJ's determination that he had poor self-management and he

18   was noncompliant with treatment, which can constitute a clear and convincing reason for finding his

19   subjective complaints lacked credibility.  *Fair*, 885 F.2d at 603; *Bunnell*, 947 F.2d at 346.

20           Plaintiff asserts that the ALJ's consideration of Plaintiff's noncompliance with treatment was an

21   error, because "the ALJ failed to demonstrate that any noncompliance was evidence of a lack of

22   symptoms, or that compliance with medications and diet would have alleviated Plaintiff's disability."

23   (Doc. 29 at 11.)  However, as the magistrate judge observed, the ALJ did appear to not make Plaintiff's

24   noncompliance an independent basis for rejecting Plaintiff's statements.  (*See* Doc. 15-2 at 36-37.)

25   Rather, the ALJ found that "much of the objective medical evidence indicates normal physical

26

27   ───────────────

28   [3] Similarly, Plaintiff's objection that the ALJ did not sufficiently identify the contradictory evidence is
     unavailing. The Court was able to the cited record—including Exhibits 2F, 3F, and 4F—and finds the cited
     exhibits include the evidence identified by the ALJ.

1   functioning, despite poor compliance with treatment recommendations." (*Id.* at 37.)  Plaintiff does not

2   dispute this finding of the ALJ.  (*See* Doc. 20 at 8-9.)  The ALJ's consideration of Plaintiff's

3   noncompliance with treatment was proper, even without finding that compliance would have alleviated

4   his disability.  *Fair*, 885 F.2d at 603; *Bunnell*, 947 F.2d at 346; *see also Vue v. Comm'r of Soc. Sec*,

5   2022 WL 1751048, at *12-13 ("repeated instances of noncompliance with prescribed medication

6   regimes…[is] a clear and convincing reason").

7       **C.      Conclusion**

8           The ALJ carried his burden to identify clear and convincing reasons to reject Plaintiff's

9   subjective complaints and set forth findings "sufficiently specific to allow a reviewing court to

10  conclude the ALJ rejected the claimant's testimony on permissible grounds."  *Moisa v. Barnhart*, 367

11  F.3d 882, 885 (9th Cir. 2004).

12  **VI.     Conclusion and Order**

13          According to 28 U.S.C. § 636(b)(1), this Court performed a *de novo* review of this case.

14  Having carefully reviewed the entire matter—including Plaintiff's objections—the Court concludes

15  the ALJ properly considered Plaintiff's subjective statements, and the administrative decision must be

16  affirmed.  *See Sanchez v. Sec'y of Health & Human Serv.,* 812 F.2d 509, 510 (9th Cir. 1987).  Thus,

17  the Court **ORDERS**:

18          1.      The Findings and Recommendations (Doc. 26) are **ADOPTED** in part.

19          2.      Plaintiff's appeal and request for remand (Doc. 20) are **DENIED**.

20          3.      Defendant's request to affirm the administrative decision (Doc. 25) is **GRANTED**.

21          4.      The Clerk of Court is directed to terminate any pending motions; enter judgment in

22                  favor of defendant Frank Bisignano, Commissioner of Social Security, and against

23                  Plaintiff Aubrey McFall; and to close this case.

24

25  IT IS SO ORDERED.

26      Dated:   __**August 4, 2025**__

27                                                      UNITED STATES DISTRICT JUDGE

28